UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZACHARY SMITH, )<br>)<br>Defendant. ) | No. 1:18-cr-180-TRM-SKL |

## REPORT & RECOMMENDATION

Before the Court is an untimely motion to suppress, with supporting memorandum, filed by Defendant Zachary Smith ("Defendant") [Docs. 116, 117]. Defendant's motion seeks to suppress all evidence obtained as a result of his warrantless arrest, including his own statements and any statements by a co-defendant, Lorenzo Wells ("Wells") [Doc. 116]. Plaintiff United States of America ("Government") filed a response in opposition to the motion [Doc. 122]. The motion to suppress was referred for a report and recommendation by standing order pursuant to 28 U.S.C. § 636(b). An evidentiary hearing on the motion was held on September 11, 2019. The Government's post-hearing brief [Doc. 130] has been reviewed. Defendant did not file a post-hearing brief, and the time for doing so has passed. Instead of filing a post-hearing brief, Defendant filed a motion to "withdraw/strike" his motion to suppress [Doc. 133] along with a notice of intent to enter a guilty plea [Doc. 134]. This matter is now ripe.

For the reason addressed below, I **FIND** no constitutional violation occurred with respect to all claims raised in Defendant's motion to suppress. Given Defendant's recent filings, I **RECOMMEND** that Defendant's motion to strike be **GRANTED** and that his meritless motion to suppress be **STRICKEN**.

**I.     FACTUAL BACKGROUND**

The Government called Chattanooga Police Department ("CPD") officers Lee Wolff ("Wolff") and Tim Pickard ("Pickard") as witnesses. Wolff has extensive experience as a detective in the CPD Narcotics Unit and Pickard has extensive experience as a detective in the CPD Fugitives Unit. Defendant called no witnesses. Various photographs of the scene, a recording of the radio traffic, and two police reports were submitted as exhibits by the parties. The collective evidence credibly establishes the following.

On September 11, 2018, local and federal law enforcement officers were conducting surveillance at certain Lee Highway area hotels in an effort to arrest Wells, an alleged heroin dealer/indicted fugitive, on outstanding warrants. In connection with a heroin overdose, law enforcement officers had developed information from a confidential source that Wells and Defendant—an associate of Wells—were linked to the overdose and were in the Lee Highway area selling drugs. Law enforcement's target was Wells. However, they also had an interest in talking to Defendant and had obtained a photograph of Defendant from his Facebook account because the confidential source said Defendant sold illegal drugs with, and acted as an enforcer or bodyguard for, Wells.[1]

Around 2:00 p.m., Wolff and narcotics detective Vernon Kimbrough ("Kimbrough") observed Defendant leave one nearby area hotel (WoodSpring Suites) and drive a very short distance to another area hotel (America's Best Inn) in a maroon Dodge Durango. The Durango ended up parked near the detectives' uncover vehicle at America's Best Inn. The detectives saw an unidentified woman approach the Durango. Defendant and the woman engaged in a quick

---

[1] Although there was testimony about information provided by a second confidential source in a hotel room, Pickard disclaimed its relevance to his decision to detain Defendant, so I will not address it herein.

hand-to-hand exchange of money for something in the parking lot. Defendant made eye-contact with the nearby undercover detectives, and they became concerned he had spotted them. The Durango then left the parking lot. Based on their extensive law enforcement training and experience, the detectives believed the exchange was consistent with an unlawful drug transaction. The detectives communicated with the rest of the surveillance team that they had observed the Defendant "serve" someone, meaning he engaged in a hand-to-hand drug transfer. The officers did not stop or question the woman involved in this suspected drug transaction with Defendant.

After reporting the hand-to-hand transaction and that the Durango was leaving, the detectives asked Pickard, via radio communications, whether the Durango should be stopped. Pickard then communicated with another officer in a marked patrol car to "find a reason" to make a traffic stop of the Durango. The Durango, however, immediately returned to the parking lot of the WoodSpring Suites. The detectives then saw what they believe was another hand-to-hand drug transaction between Defendant and a man in the WoodSpring Suites' parking lot, but they were too far away to see cash change hands, unlike the transaction they observed in the America's Best Inn's parking lot. Wolff acknowledged during the hearing that what he witnessed could have been a handshake. However, based on their extensive training and experience, the detectives concluded (and reported via radio) that it was a second drug transaction involving Defendant. Again, the officers did not stop or question the man involved in this suspected drug transaction with Defendant.

The Durango was parked in a handicap parking space near a non-lobby entrance to America's Best Inn, and Defendant entered the hotel. Pickard made the decision that the officers had enough information to approach Defendant and the officers begin to formulate a plan for stopping or arresting Defendant before he returned to the Durango. Pickard's testimony indicates

3

he believed the officers had both reasonable suspicion for a stop and probable cause to arrest Defendant based on the information from the confidential informant that Wells and Defendant were selling drugs in the area and the detectives' observation of one, and maybe two, hand-to-hand drug transactions. Pickard testified he wanted to approach Defendant and talk to him so they could find Wells. Pickard also agrees his instruction to the other officers via radio communication was to "take him (meaning Defendant) down" and that he thought the officers had enough evidence for an arrest even though he had previously asked the patrol officer to find a reason to stop the Durango.

As Defendant walked out of the hotel with a woman, officers in police gear approached Defendant in the hotel parking lot. At the same time, officers pulled up to and blocked in the Durango. The officers attempting the stop were in police gear and clothing clearly indicating they were law enforcement. When Defendant and the woman saw the officers approaching, she stayed and he fled on foot. Officers pursued Defendant on foot and in vehicles. After Defendant had run about 100 yards, the officers began to close in and Defendant put his hands up and laid down on the ground.

Officers then arrested, handcuffed and frisked Defendant. Eventually, heroin, cocaine, ecstasy, and marijuana were discovered on Defendant's person and a loaded pistol and ammunition were found in the Durango. Defendant also made incriminating statements.

In a multi-defendant, multi-count indictment filed December 17, 2018, Defendant is charged with a single count of conspiracy to distribute 50 grams or more of methamphetamine (actual) or 500 grams or more of a methamphetamine mixture in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A) and 846 [Doc. 1]. While the motion to suppress is untimely under the scheduling order, the motion will be considered.

4

## II. STANDARDS

The Fourth Amendment guards against, *inter alia*, unreasonable seizure and searches of a person. U.S. Const. amend. IV. Encounters between police and citizens can be grouped into three types: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry*[2] stop which must be predicated upon reasonable suspicion; and (3) arrests which must be based upon probable cause." *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quotation marks omitted) (quoting *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008)). In his motion to suppress, Defendant disputes the existence of either reasonable suspicion supporting a *Terry* stop or probable cause supporting an arrest.[3]

Generally, if a seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained as a result of the seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'" (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963))). This remedy of exclusion is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), to be used as a "last resort, not [a] first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated by a challenged search or seizure. *See*

---

[2] *See Terry v. Ohio*, 392 U.S. 1 (1968).

[3] "Once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment." *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007) (citing *Reid v. Georgia*, 448 U.S. 438, 440 (1980)). The Government does not contend there was a consensual encounter.

5

*Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). It is the Government's burden, however, to demonstrate by a preponderance of the evidence that a particular search or seizure is constitutional. *See United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004).

### III. ANALYSIS

Defendant's motion seeks suppression of all evidence seized and statements obtained (from himself and later from Wells) alleging they are "fruit of the poisonous tree" because his warrantless arrest was unlawful. Defendant focused his arguments on an alleged lack of probable cause, but also claimed a lack of reasonable suspicion.

To be unlawful, a seizure must be unreasonable. *Elkins v. United States*, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."). All seizures—including brief investigatory stops—receive Fourth Amendment protection. *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011) (citing *United States v. Smith*, 594 F.3d 535, 535 (6th Cir. 2010)). Officers may temporarily seize a person, i.e., conduct a *Terry* stop, if the officers have "reasonable suspicion" of criminal activity stemming from "specific and articulable" facts the officers know at the time of the stop. *Terry*, 392 U.S. at 21-22, 27; *United States v. Bentley,* 29 F.3d 1073, 1075 (6th Cir. 1994) ("[W]here a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances.").

An officer who decides to conduct a *Terry* stop must be acting on more than his "inchoate and unparticularized suspicion or 'hunch;'" rather, he must rely on "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the

6

evidence." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). "[A] pattern of suspicious behavior need only be recognizable by one 'versed in the field of law enforcement.'" *United States v. Knox,* 839 F.2d 285, 290 (6th Cir. 1988) (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (internal citation and quotations omitted). This is not a high bar—all that is needed is "a minimal level of objective justification" for the stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Sokolow*, 490 U.S. at 7); *see also Navarette v. California*, 572 U.S. 393, 396-97 (2014).

Moreover, it is well-settled that an officer may arrest an individual if the officer has probable cause to believe the person has committed or is committing a felony based upon the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). "[P]robable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). "The establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989) (quoting *Gates*, 462 U.S. at 244 n.13), *superseded on other grounds by* 18 U.S.C. § 3742(e). A probable cause determination depends on whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted). The

7

reviewing court must assess probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citation omitted).

To address the Fourth Amendment issues raised in a particular seizure, the court must determine the moment of seizure. Because the physical capture of a person is sufficient, but not necessary to seize a person, an officer can seize a person either through physical force or a show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007) (holding a seizure within the meaning of the Fourth Amendment occurs when a law enforcement officer "by means of physical force or show of authority terminates or restrains [a person's] freedom of movement through means intentionally applied." (internal citations, quotation marks and emphasis omitted)). Where a defendant argues a seizure occurred as a result of an officer's show of authority, the facts must also indicate the defendant submitted to the officer. *Id.* ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.") (quoting *California v. Hodari D.*, 499 U.S. 621, 626 n. 2 (1991) (other citation omitted)); *Scozzari v. McGraw*, 500 F. App'x 421, 424 (6th Cir. 2012) ("However—and critically for purposes of this case—in order to be seized a person must actually yield to a showing of authority." (citations omitted)).

Bolting from the parking lot in an attempt to flee from the officers does not amount to any sort of submission to the officers' authority by Defendant. *See, e.g., Brendlin*, 551 U.S. at 254; *Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011) (holding a suspect is not seized until he submits to the officers show of authority, even if the officers have their guns drawn before the suspect submits); *United States v. McCauley,* 548 F.3d 440, 441-44 (6th Cir. 2008) (holding a man

8

who "ignored" the command of an officer to stop was not seized until the officer drew his weapon and the suspect raised his arms). The officers' attempt to seize Defendant in the parking lot simply does not constitute a seizure and the existence of reasonable suspicion or probable cause to support their *attempted seizure* is largely immaterial. *See e.g., Hodari D.*, 499 U.S. at 629 (holding the defendant was not seized until the officer physically tackled him); *United States v. Jones*, 637 F.3d 497, 501-02 (holding there is no seizure without submission); *United States v. George*, 456 F. App'x 530, 532 (6th Cir. 2012) ("When a seizure is effected by a show of authority rather than physical force, 'an individual must actually yield to the show of authority to be seized within the meaning of the Fourth Amendment.'" (citations omitted)); *Jones*, 562 F.3d at 774 (holding a passenger who jumped out of a car after the car was hemmed in by police, as if to run away, was not seized until he complied with an officer's order to stop); *McCauley,* 548 F.3d at 441-43 (holding defendant not seized until he raised his arms in submission).

It is the suspect's *compliance* with an officer's show of force, and not the show of force itself, that is necessary to result in seizure. *United States v. Lindsey*, No. 1:11-CR-92, 2012 WL 1249521, *4 (E.D. Tenn. Apr. 13, 2012) (citations omitted). I **FIND** Defendant was not seized until he put his hands up and laid down after his brief flight. Therefore, the pertinent question is whether probable cause existed at that point to support Defendant's warrantless arrest. *See United States v. Dickens*, 748 F. App'x 31, 36 (6th Cir. 2018) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998) ("In determining whether probable cause exists, we may not look to events that occurred after the [arrest] or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the [arrest].") (alterations in original)). I **FIND** there was abundant probable cause.

Experienced narcotics detectives observed Defendant engage in one, and possibly two,

hand-to-hand drug transactions providing some corroboration of the confidential source's information that Wells and his associates were engaging in drug transactions in the staked-out area. These circumstances alone provide (at least) reasonable suspicion to conduct a *Terry* stop. *See e.g., Williams v. United States*, 632 F. App'x 816, 823 (6th Cir. 2015) (holding defendant's presence at address where police were investigating drug sales, coupled with his participation in what appeared to be a drug transaction, provided reasonable suspicion for the police to make a *Terry* stop to investigate) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *United States v. Alexander*, 528 F. App'x. 515, 519 (6th Cir. 2013) ("Hand-to-hand transactions consistent with drug transactions are 'highly probative' in evaluating reasonable suspicion." (citation omitted)); *Jones*, 673 F.3d at 502 (hand-to-hand transactions "highly probative" of reasonable suspicion); *United States v. Johnson*, 627 F.3d 578, 584 (6th Cir. 2010) (finding reasonable suspicion where defendant "was seen engaging in a hand-to-hand transaction with a man in a high-crime area known for drug activity")). Defendant raised that certain police reports, Defendant's Exhibits 3 and 4, do not mention the confidential informant's information or the hand-to-hand transactions. Nevertheless, the entirely credible testimony establishes that the officers had information from at least one informant and observed at least one, and maybe two, hand-to-hand drug transactions.

In addition, when officers approach a person whom they reasonably suspect is engaged in criminal activity and that person flees, reasonable suspicion ripens into probable cause. *See Williams*, 632 F. App'x at 823 (holding that because the officers had reasonable suspicion of criminal activity after observing defendant engage in a hand-to-hand transaction, they had probable cause to arrest Williams once he fled); *United States v. Dotson*, 49 F.3d 227, 230-31 (6th Cir. 1995) (holding that if officers have reasonable suspicion of criminal activity, and the suspect flees when the officers attempt to stop him, the officers' reasonable suspicion ripens into probable

10

cause); *see also Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." (citations omitted)). Therefore, even if the officers did not have probable cause when they first approached Defendant to arrest him, his flight—in combination with the previously mentioned factors that support reasonable suspicion—provided it.

Although not addressed by the parties, I note it is permissible for one officer to rely on another officer's observations for purposes of establishing probable cause. *See United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (holding that for assessing whether probable cause exists, the court "mutually impute[s] the knowledge of all the agents working together on the scene and in communication with each other"); *accord United States v. Rodriguez-Suazo*, 346 F.3d 637, 650 (6th Cir. 2003):*see also Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) ("Many circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest." (citing cases)).

Considering the totality of the circumstances, I **FIND** the officers' reasonable suspicion clearly ripened into probable cause to arrest Defendant and his ensuing arrest was completely lawful. *See Williams*, 632 F. App'x. at 823 (citing *Alexander*, 528 F. App'x at 519; *Dotson*, 49 F.3d at 230-31).

## IV. CONCLUSION

For the reasons stated above, I **RECOMMEND**[4] that Defendant's motion to strike [Doc. 133] be **GRANTED** and his meritless motion to suppress [Doc. 116] be **STRICKEN**.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).